IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL

LOGEMANN V. VALGORA

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DARRELL LOGEMANN, APPELLEE,
v.
REGINALD VALGORA, APPELLANT.

Filed July 30, 2013.    No. A-12-845.

Appeal from the District Court for Douglas County, LEIGH ANN RETELSDORF, Judge, on appeal thereto from the County Court for Douglas County, MARCELA A. KEIM, Judge. Judgment of District Court affirmed.

Joseph L. Howard, of Dornan, Lustgarten & Troia, P.C., L.L.O., for appellant.

Howard L. Neuhaus, P.C., L.L.O., for appellee.

INBODY, Chief Judge, and IRWIN and MOORE, Judges.

IRWIN, Judge.

## I. INTRODUCTION

This appeal involves a dispute between a landlord, Darrell Logemann, and a tenant, Reginald Valgora. Specifically, the dispute concerns whether, pursuant to the terms of a lease agreement, Valgora is personally liable to Logemann for unpaid rent during a time when Valgora was no longer personally occupying the leased premises, but his former company was still in possession of that property. Ultimately, the county court found that Valgora is liable for certain unpaid rents and entered judgment against him. Valgora appealed the judgment to the district court. The district court affirmed the decision of the county court.

Valgora now appeals from the district court's affirmance of the judgment against him. Upon our review, we find that the district court correctly affirmed the county court's order, and as such, we also affirm.

## II. BACKGROUND

In January 2000, Logemann and Valgora entered into a written lease agreement for commercial property located in Bennington, Nebraska. Valgora utilized this property to house his business, V.T. & E. Plastics. V.T. & E. Plastics manufactures plastic products. Valgora signed the lease as "Reg Valgora, Pres. V.T.E. Plastics."

Certain provisions of the written lease agreement between Logemann and Valgora are integral to our resolution of this appeal. As such, before we discuss the facts which gave rise to this appeal, we will briefly detail the most pertinent provisions of the January 2000 lease agreement.

The lease provided that Valgora would pay rent to Logemann in the amount of $15,000 per year, payable in monthly installments, and that the lease was for a term of 2 years. At the expiration of that 2-year period, the lease gave Valgora the option to renew the lease for an additional term of 12 months. The lease specifically provided that "[a]ll of the terms and conditions of the [original] lease shall apply during the renewal term except that the monthly rent" may increase if the real estate taxes on the property increase.

The lease also included a provision about assigning and subletting. That provision provided:

> Lessee shall not assign this lease or sublet any portion of the premises without prior written consent of the Lessor, which shall not be unreasonably withheld. Any such assignment or subletting without consent shall be void and, at the option of the Lessor, may terminate this lease.

The lease also indicated the proper manner to provide notice to either party to the lease.

> Any notice which either party may or is required to give, shall be given by mailing the same, postage prepaid, to Lessee at the premises, or Lessor at the address shown below, or at such other places as may be designated by the parties from time to time.

Valgora and V.T. & E. Plastics occupied the leased premises beginning in January 2000. When the lease term expired on February 28, 2002, Logemann had a conversation with Valgora about whether Valgora wanted to continue to lease the property. Ultimately, Logemann and Valgora orally agreed to continue the lease on a month-to-month basis. Logemann believed that all of the provisions of the original, January 2000, lease applied to the oral month-to-month lease agreement.

A few months after Logemann and Valgora orally agreed to renew the lease on a month-to-month basis, Valgora incorporated V.T. & E. Plastics to form VTE, Inc. Valgora did not notify Logemann of the incorporation of his business, nor did he formally request that he be permitted to assign the lease to the newly formed corporation. However, Valgora did pay his rent on checks with the corporation's name.

The oral month-to-month lease between Logemann and Valgora continued through 2004. In 2004, Valgora left VTE and Valgora's son, Raymond Valgora, took over the business. Valgora did not notify Logemann he was no longer part of the business.

After Valgora left the company, VTE continued to occupy the leased premises. In January 2008, Logemann increased the rent for the leased premises from $1,250 per month to $1,500 per month. Logemann sent a letter addressed to Valgora and Raymond to notify them of

the rent increase. After the letter was sent, Logemann spoke with Raymond and again informed him of the rent increase. VTE paid the increase in rent and continued to occupy the leased premises.

Logemann stopped receiving any rent for the leased premises in October 2009. In August 2010, Logemann filed a complaint in county court to recover unpaid rent for the period from November 2009 to May 2010, when Logemann changed the locks on the leased premises. In his complaint, Logemann named "Reg Valgora and Ray Valgora, dba V.T. & E. Plastics," as the defendants. Ultimately, a default judgment was entered against Raymond. Raymond is not a party to this appeal, and as such, we focus only on Logemann's claims against Valgora.

In September 2010, Valgora filed an answer to Logemann's complaint. In the answer, Valgora denied Logemann's claims concerning the unpaid rent. He also raised three "Affirmative Defenses." First, he alleged that he is not an owner or operator of "V.T. & E. Plastics, aka Valgora Tool and Engraving, Inc.," and, as a result, has no "legal interest" in the company. Next, he alleged that he had previously transferred all of his interest in the company to his son, Raymond, "prior to the alleged execution of an oral lease agreement." Finally, Valgora alleged that he "was not a party to any oral rental agreement with [Logemann]." Valgora argued that he is not responsible for any of the monetary damages sought by Logemann.

Trial was held in January 2012. At trial, Valgora argued that he was not liable for the unpaid rent because after he incorporated his business he was "protected as a corporation" from being held personally liable. In the alternative, he argued that when Logemann increased the monthly rent in 2008, a new lease was created and Valgora was not a party to that new lease because he had left VTE in 2004.

After the trial, the county court entered an order finding: "[Valgora] admits he neither notified [Logemann] of the . . . incorporation of V.T. & E. Plastics [after entering into the oral month-to-month lease agreement], nor of his resignation from V.T. & E. Plastics; furthermore, [Valgora] never attempted to re-negotiate the oral contract at any time." The court went on to find that Valgora was liable to Logemann for $9,000 in unpaid rent for the period from November 2009 through April 2010.

Valgora appealed the county court's judgment to the district court. On appeal, Valgora argued that the county court erred in finding that he was liable for unpaid rent during a time when he was no longer associated with VTE and was, as a result, no longer occupying the leased premises. Ultimately, the district court affirmed the decision of the county court and found that Valgora was liable to Logemann for $9,000 in unpaid rent. In affirming the county court's decision, the district court found that Valgora was personally liable under the terms of the oral month-to-month lease agreement entered into in February 2002. The district court then found that the county court was not clearly wrong in concluding that there was not a "new" lease agreement created at any time after February 2002.

Valgora appeals the district court's affirmance to this court.

### III. ASSIGNMENTS OF ERROR

On appeal, Valgora generally asserts that the district court erred in affirming the county court's decision that he is personally liable to Logemann for unpaid rents which accrued in 2009 and 2010. Specifically, Valgora contends the lower courts erred in failing to find that a new lease

agreement was created in 2008 when Logemann negotiated a rent increase with Raymond, that Valgora was not a party to such lease, and that Valgora is not liable for any unpaid rents after the 2008 lease was created.

## IV. STANDARD OF REVIEW

In an appeal from the county court general civil docket, the district court acts as an intermediate court of appeals and not as a trial court. See *In re Conservatorship of Mosel*, 234 Neb. 86, 449 N.W.2d 220 (1989). Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. *State v. Patterson*, 7 Neb. App. 816, 585 N.W.2d 125 (1998).

When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *State v. McCave*, 282 Neb. 500, 805 N.W.2d 290 (2011).

On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Henriksen v. Gleason*, 263 Neb. 840, 643 N.W.2d 652 (2002).

## V. ANALYSIS

Upon our review, we conclude that the lower courts did not err in finding that Valgora is personally liable to Logemann for unpaid rent for the period from November 2009 through April 2010, even though during this time Valgora was no longer personally occupying the leased property and was no longer involved in the operation of VTE. Valgora is still liable for the unpaid rent, because the terms of the 2002 oral month-to-month lease agreement between Logemann and Valgora continued to control in late 2009 and early 2010.

### 1. JANUARY 2000 WRITTEN LEASE AGREEMENT

Initially, we find that the lower courts did not err in concluding that Valgora signed the January 2000 lease agreement in his personal capacity and that, as such, he was personally liable for any rents accrued under the terms of that lease agreement.

In January 2000, Logemann and Valgora entered into a written lease agreement. Valgora signed the lease as "Reg Valgora, Pres. V.T.E. Plastics." In January 2000, Valgora had not yet incorporated his business and, as such, signed the lease in his personal capacity and not as a representative of any corporation. See *Toulousaine de Distrib. v. Tri-State Seed & Grain*, 2 Neb. App. 937, 520 N.W.2d 210 (1994) (holding that individual, doing business under another name, does not create entity separate and distinct from person operating business, and person remains personally liable for all of his obligations). At oral argument, Valgora's counsel conceded that the original, written lease agreement was signed in Valgora's personal capacity.

### 2. FEBRUARY 2002 ORAL LEASE AGREEMENT

Next, we find that the lower courts did not err in concluding that Valgora executed the February 2002 oral lease agreement in his personal capacity and that, as such, he was personally liable for any rents accrued under the terms of that lease agreement. In addition, we find that the

district court did not err in concluding that the terms of the original January 2000 lease agreement also applied to the February 2002 oral lease agreement.

Pursuant to the terms of the original January 2000 lease agreement, the lease expired on February 28, 2002. The original lease agreement provided an option for Valgora to renew the lease for an additional term of 12 months after the original lease expired; however, Valgora did not provide the necessary written notice to exercise the option to renew.

Instead, at the time the original lease expired, Logemann and Valgora had a discussion about whether Valgora wished to continue leasing the property. Ultimately, they orally agreed to continue the lease on a month-to-month basis. In February 2002, when Logemann and Valgora entered into the oral lease agreement, Valgora had not incorporated his company. As such, the lease agreement was between Logemann and Valgora, in his personal capacity. See *Toulousaine de Distrib. v. Tri-State Seed & Grain, supra*.

At trial, Logemann testified that he believed that all of the terms of the original lease agreement applied to the new, oral lease agreement. Logemann's belief is consistent with the terms of the original lease agreement which provided that "[a]ll of the terms and conditions of the [original] lease shall apply during the renewal term." His belief is also consistent with the general principle that "'[w]here the covenant for a renewal is general and does not state the terms of the renewal lease, the new lease is to be upon the same general terms and conditions as the old lease, which are applicable to the renewal period. . . .'" *Bishop Cafeteria Co. v. Ford*, 177 Neb. 600, 607, 129 N.W.2d 581, 587 (1964). See, also, *Otto v. Hongsermeier Farms*, 217 Neb. 45, 348 N.W.2d 422 (1984); *Krull v. Rose*, 88 Neb. 655, 130 N.W. 272 (1911); 49 Am. Jur. 2d, Landlord and Tenant, § 291 (2006). In addition, we note that during oral argument, Valgora's counsel agreed that the terms of the original lease were applicable to the oral month-to-month lease agreement.

(a) Incorporation of V.T. & E. Plastics

A few months after Logemann and Valgora entered into the oral month-to-month lease agreement, Valgora incorporated his company and formed VTE. It was undisputed at trial that Valgora did not ever notify Logemann of the incorporation, nor did he ever request to assign the lease to the corporation. Under the terms of the lease agreement, Valgora was prohibited from assigning the lease or subletting the leased premises without Logemann's prior approval. Because Valgora never notified Logemann of the incorporation or requested to assign the lease to the newly formed corporation, such incorporation of the business, by itself, did not have an effect on the lease agreement which had been executed between Logemann and Valgora.

On appeal, Valgora argues that Logemann should have known that Valgora incorporated the company and that Valgora no longer intended to be personally liable under the lease agreement because Valgora began to pay his rent using corporate checks. We find that Valgora's argument lacks merit. Pursuant to the lease agreement, Valgora was required to obtain explicit approval from Logemann for any assignment of the lease or subletting of the leased premises. Valgora did not obtain any such approval. As such, even if Logemann knew that Valgora had incorporated the company, such knowledge does not equate to an implicit approval of an assignment of the lease. In fact, at trial, Logemann testified that he understood the lease to be

between himself and Valgora and not between himself and a company or corporation. Logemann indicated, "I was dealing with Reggie."

Based on the evidence presented at trial, we conclude that Valgora was still personally liable under the terms of the 2002 oral lease agreement even after he incorporated his business to form VTE.

### (b) Raymond Takes Over VTE

In 2004, Valgora left VTE and Valgora's son, Raymond, took over the business. VTE continued to occupy the leased premises and continued to pay rent to Logemann. Valgora did not notify Logemann he was no longer part of the business, nor did he request to assign the lease to VTE or to Raymond. Because Valgora never notified Logemann that he had left the business or requested to assign the lease, Raymond's taking over the business did not have an effect on the lease agreement which had been executed between Logemann and Valgora.

At trial, both Logemann and Valgora testified that Logemann was never notified that Raymond had taken over the business and that Valgora was no longer involved in the business operations and, thus, was no longer personally occupying the leased premises. Logemann did indicate that he knew that Raymond worked with Valgora, but he did not know that Raymond had taken over the business in 2004. Other evidence presented at trial also demonstrated that Logemann did not know that Valgora had left the business. Logemann continued to address all correspondence concerning the leased premises to Valgora, Raymond, and V.T. & E. Plastics. In addition, sometime in the early part of 2008, Logemann, Valgora, and Raymond discussed the possibility of Valgora's buying the leased premises from Logemann. There is no indication that during this conversation, which was held 4 years after Valgora left the company, that anyone notified Logemann of Valgora's having left the company and Raymond's taking it over.

Based on the evidence presented at trial, we conclude that Valgora was still personally liable under the terms of the 2002 oral lease agreement even after he left VTE and Raymond took over the business.

### (c) 2008 Rent Increase

In January 2008, Logemann sent a letter to "Reggie and Ray Valgora[,] VT &E Plastics," notifying them that he was increasing the monthly rent on the leased premises from $1,250 per month to $1,500 per month. In the letter, Logemann stated, "I haven't raised your rent over the years, and with tax and insurance increases I have incurred, I have to increase the rent." Subsequent to Logemann's sending this letter to Valgora and Raymond, Logemann had a conversation with Raymond about the increase in rent. At trial, Raymond testified that Logemann told him that the rent was going to be increased to $1,500 per month. Raymond testified, "I wasn't in a position to say no," and Raymond paid the rent increase without further discussion.

The lower courts found that the evidence presented at trial did not demonstrate that the 2008 increase in rent created a new lease agreement between Logemann and Raymond or that such rent increase altered Valgora's liability or responsibility under the terms of the 2002 oral lease agreement. Essentially, the courts found that even after the 2008 rent increase, Valgora was still personally liable under the terms of the 2002 oral lease agreement and that, accordingly,

Valgora was personally liable for the unpaid rent which accrued from the period of November 2009 through April 2010. Upon our review of the record, we cannot say that the lower courts erred in their findings.

The 2008 rent increase was contemplated, at least in part, by the terms of the 2002 oral lease agreement. The January 2000 written lease agreement provided that if the lease was renewed after its expiration in February 2002, the monthly rent may increase if the real estate taxes on the property increased. As we discussed above, the terms of the original lease agreement also applied to the February 2002 oral lease agreement. As such, under the terms of the oral lease agreement, the monthly rental rate could be increased if the real estate taxes on the property increased. Logemann's January 2008 letter specifically indicated that the increase in rent was due to an increase in the taxes and insurance for the property. Presumably, the increase in taxes referred to in the letter was an increase in the real estate property taxes. As such, the 2008 rental increase was contemplated, at least in part, by the terms of the oral lease agreement, and such a rental increase would not create an entirely new lease agreement.

On appeal, Valgora appears to argue in his brief that the increase in rent was not due to an increase in real estate property taxes, but was due to an increase in another type of tax and an increase in insurance costs, and that, as a result, such an increase was not contemplated by the terms of the oral lease agreement. However, Valgora did not advance this argument at trial before the county court or during his appeal to the district court. Absent plain error, where an issue is raised for the first time in this court, it will be disregarded inasmuch as the court whose judgment is being reviewed cannot commit error regarding an issue never presented and submitted for disposition. *State v. Whitmore*, 238 Neb. 125, 469 N.W.2d 527 (1991). Because this is the first time that Valgora has raised such an argument and because we do not find any plain error in the lower court's conclusion that the 2008 rent increase did not create a new lease agreement, we do not address Valgora's assertion any further.

Valgora also asserts that the 2008 rent increase created a new lease agreement between Logemann and Raymond because they negotiated the rent increase and Valgora was not a party to, nor did he consent to, those negotiations. Valgora's assertion is without merit. The record does not reflect that any "negotiation" occurred between Logemann and Raymond regarding the increase in rent. Instead, the evidence presented at trial indicates that Logemann attempted to notify both Valgora and Raymond of the rent increase via letter and then notified Raymond of the rent increase during a conversation. There is no evidence that Logemann and Raymond negotiated the amount of the rent increase or any other change in the lease agreement. Raymond testified at trial that he did not believe he could negotiate or oppose the rent increase and simply began paying the increased amount. This testimony supports the finding that the 2008 rent increase was contemplated by the oral lease agreement and that there was no discussion required in order to effectuate the increase in rent.

Based on the evidence presented at trial, we conclude that the lower courts did not err in finding that the 2008 increase in rent did not create a new lease agreement between Logemann and Raymond or in finding that such rent increase did not alter Valgora's liability or responsibility under the terms of the 2002 oral lease agreement. After the 2008 rent increase, Valgora was still personally liable under the terms of the 2002 oral lease agreement, and accordingly, Valgora was personally liable for the unpaid rent which accrued from the period of

November 2009 through April 2010. We affirm the decision of the district court which affirmed the decision of the county court finding Valgora liable to Logemann for $9,000 in unpaid rent.

## VI. CONCLUSION

Upon our review, we find that the district court correctly affirmed the county court's entry of judgment against Valgora and in favor of Logemann in the amount of $9,000. And, as such, we also affirm.

AFFIRMED.